Our second case for this morning is Allen v. Greatbank Trust Company. And we will hear first, I believe, from Mr. Breckenridge. When you're ready. Good morning. May it please the court. This case involved dismissal of two claims based on straightforward misapplications of law by the district court. First, the district court dismissed the plaintiff's prohibited transactions claims based on a theory that the prohibited transactions claims, the plaintiffs had to disprove exceptions in Section 1108 based on their prohibited transactions claims. And that violated a subtle precedent in this circuit. First of all, it violated Fish v. Greatbank, in which this court ruled that Section 1108 exceptions are affirmative defenses that have to be proven by the defendant. And then it violated myriad precedents in this circuit, including Stewart v. Local 727, establishing that plaintiffs need not plead facts that disprove affirmative defenses. The ineluctable conclusion from those two cases is that plaintiffs do not need to plead facts disproving Section 1108 exceptions, and Greatbank has not given any reason why this court should depart from that subtle precedent. So what they're afraid of, I gather, is that if anybody can come in and say, even in a privately held stock transaction, that the values seem too low, and thus all sorts of ERISA violations have happened, prohibited transactions or breaches of fiduciary duty, that it's a floodgates argument. Yes, Your Honor. That's the primary argument they rely on, an argument that was rejected by the Supreme Court in Dudenhofer, an argument that was rejected by the Eighth Circuit in Braden, for myriad reasons, one of which being that Congress set these prohibited transactions in the statute, and Congress created ESOPs, which are a special animal. And if Congress chooses to create ESOPs and then chooses to create special burdens on trustees, then it may choose to do so. In addition, we're not treading any new ground here with respect to prohibited transactions, and there has not been some grand floodgate opening. There was no floodgate opening after Dudenhofer when the Supreme Court ruled that Sixth Circuit, I believe it was, were wrong to have created a presumption of prudence in general for fiduciaries. There's not been a floodgate after Braden. There won't be a floodgate after this Court relies on its own settled precedent and prohibited transactions claims. So what kind of meat on the bones are you relying on? You obviously have the fact that the value of the stock decreases by 22 percent 22 days after the purchase, convenient symmetry there, and it keeps on going down.  What else do you have other than that? Well, in response to that first, Your Honor, I'd like to clarify that that seems to go to the breach of fiduciary duty claim and not the prohibited transactions claim. Right. I think that's right. But on the breach of fiduciary duty claim, in addition to the difference in valuation, and I would clarify that, I would say that's a difference in valuation, not necessarily a drop over the course of those 21 days because those were two relatively contemporaneous valuations, but the complaint raised the reasonable inference that the first valuation was plain wrong in the first instance, so I wouldn't necessarily characterize it as a drop as BreakBank tries to. But in addition to that, there is the… So remind me, does the complaint say they just picked this number of $60 million out of the air, or does the complaint otherwise specify? Well, the complaint says that they misvalued the stock. It does not specify exactly how they misvalued the stock. As noted in Braden, the documents that would establish that are not within the control of the plaintiffs, and so we don't have specific knowledge of exactly how they misvalued the stock because we don't have access to those documents, even though we have asked for them and were denied. And there's no requirement that they give them to us under Section 1024. That really just creates a requirement of giving planned documents. Right. Now, the only way you could get it would be through discovery, I assume. Right, exactly. And that's why this case should not have been dismissed before discovery. And in addition to the stock price, there is the interest rate on the loan, which was above market. There's the failure to obtain the loan on the open market, which was pleaded in the complaint. There's borrowing the money from the shareholders for the stock who were clearly dumping their stock. So, of course, they're going to be a little bit more inclined to loan the money for it in order to exchange it for guaranteed payments. And so, given that litany of other factors, the breach of fiduciary duty claim should not have been dismissed on that ground as well. Unless there are any further questions, I'd like to reserve the remaining time for rebuttal. That would be fine. Thank you. Mr. Hahn? Good morning. Jeff Hahn for the Secretary of Labor. The district court dismissed this case for at least two reasons that not only contravene the Supreme Court's and this court's case law, but that also would make it extremely difficult for plaintiffs to challenge the insider transactions that Congress expressly prohibited in Arisa Section 406. First, the court's extension of Dudenhoffer's requirement that plaintiffs plead special circumstances when alleging that their fiduciaries ignored publicly available information when buying publicly traded stock to this case, which involves stock in a private company, has no basis in either Dudenhoffer's text or logic. That requirement was tethered to a very specific presumption that was unique to the public stock context, which is that public stock prices generally incorporate all relevant publicly available information, and that because of that, fiduciaries can generally rely on that price as accurately reflecting the stock's value, as this court found in Summers. How do you suggest determining if a post-transaction decline in the value of assets purchased from a privately held company is big enough to make out a plausible claim of breach of fiduciary duty? Here we know the stock declined 22%. What if it had been 15%? Or what if the decline was 22% but for much smaller transactions, say $1 million versus $60 million? Well, the first response I would say is just to echo Mr. Breckinridge. That contention is relevant only to the fiduciary duty claim, not to the prohibited transactions claim. Secondly, we have not opined on whether the complaints allegations, including the stock price drop, are sufficient to sustain a fiduciary duty claim. So I don't have an answer for you as to whether these allegations are sufficient or what allegations might be sufficient. I can say that as a general matter, though, this notion that the stock price always will go down after an ESOP transaction, as Greg Frank has argued, and that somehow is the obvious explanation here. While it is certainly true that in many ESOP transactions, the debt taken on by the company can cause a price to the value, the subsequent valuation to be lower than the transaction price. That can happen. But it's definitely not the case that every time there is a subsequent valuation that is lower than the transaction price, that that discrepancy is fully and wholly explainable by debt. So that's the point that I can make, but again, I can't get to the sufficiency of these allegations here. So is it your position, then, that really the most sound theory that you think this transaction can be attacked on is the prohibited transaction theory, and that as for that, if I'm understanding your position, since Congress has just identified a certain number of things, the plaintiffs have pleaded them, and it's up to the defendants to plead the 1108 exemptions? That's correct. And I think that that conclusion, I think, first of all, flows, before even getting to the policy consequences that Greg Frank is concerned about, that conclusion flows directly from this court's precedent, particularly in Keech, where it said directly that 408 exemptions are defenses on which the defendant has the burden. This court, as Mr. Breckinridge said, has said many times that plaintiffs do not need to negate those defenses. And so as a pleading matter, the question is answered, I think, by precedent and by the statutory structure. But regarding this floodgate- And there's no heightened pleading burden for this sort of thing. This is a Rule 8, Twombly-Iqbal pleading burden. It's not a Rule 9 burden. That's correct. This is a Rule 8, Twombly-Iqbal burden. Second, regarding the floodgates argument that Greg Frank has made, I think that is overstated, first of all. The notion that this is a new, sort of a brave new world here, where plaintiffs can just start pleading any old hum-drum transaction between a plan and a party in interest and get into court, and that this is going to just start opening the floodgates, I think, has always been. They cite, I think, two district court decisions, one being unpublished, which seem to suggest that a plaintiff might need to negate an exemption in their complaint. The weight of the circuit authority, and most explicitly Braden, is directly to the contrary, which is the Eighth Circuit's 2009 decision. So I think that that concern is overstated for that reason. In addition, it seems to me highly impractical to expect plaintiffs, suddenly, to start suing willy-nilly over transactions that they have no reason to think actually caused any harm, just as a matter of cost-benefit on their part. And then thirdly, this court said in Fish that plaintiffs might need to investigate, potentially, whether any affirmative defenses might apply before filing suit. That, I think, is another deterrent to these cases sort of being filed left and right. But I think a broader point is that their position has policy consequences of its own that I think are far, far away the consequences, the unlikely consequences that they fear, which is that if fiduciaries or plaintiffs can only make out these claims by negating these 408 exemptions, many of which have multiple subparts and really relate to facts that can really only be in a fiduciary's possession and knowledge, it would make these claims incredibly hard to bring, which I think is very contrary to Congress's concern over the 406 prohibited transactions as being so susceptible to fiduciary abuse and disloyalty that they just prohibited them outright and subject to these exemptions. And I think when you have a regime like that where you have statutory prescriptions and a set of exemptions, it is a black-letter law that the party claiming the entitlement to the exemption bears the burden to prove that it exists. And I just think that if these, under the alternative pleading standard, fiduciaries would be far less vigilant in ensuring that when they do engage in these transactions that they are, in fact, exempt. Well, look, I mean, ESOPs are already, in some sense, an exception to the normal rule under ERISA for diversification. So it doesn't seem shocking that Congress would have said, but we need to be extra careful with this exception that we've made. So we're not going to allow these prohibited transactions, but we're not going to be too clumsy about it. We're also going to allow exemptions. So it's sort of a several-step process. But I think related to the sort of specialness of ESOPs, I think Dudenhofer provides kind of a nice gloss on all of this, which is that the core holding in that case is that ESOP fiduciaries are subject to the same strict standards of prudence and loyalty as all other fiduciaries are. That's Patrick Blake's quote, yes. That is what they say. That is what they say, and subject to the duty of diversification. And I think to sort of carve out sort of new, more relaxed standards I think flies in the face of that core holding. And just as a last point, if there are no other questions, I just want to emphasize that no matter what this court does with the fiduciary breach claim and holding of the district court, I think it's essential that this court correct the district court's misconstruction of Dudenhofer and its application of this special circumstances test to this case, which, as I was saying initially, really has no basis and no relevance to public private stock transaction cases as this one is. It is a test that is unique and tethered to the public stock context. So before you sit down, could you comment briefly on Great Bank's argument that actually the fiduciary theory and the prohibited transaction theory overlap here, and thus you couldn't find a prohibited transaction if there's no breach of fiduciary duty? Sure. I think that actually has it backwards. I think when you have the 404 fiduciary duty claim, the 406 prohibited transaction claims are separate claims. And more importantly, they have separate burdens of proof. The plaintiff has the burden on the 404 claim, and on the 406 claim, the plaintiff has the burden to show that there was a transaction that was prescribed, but the defendant has the more onerous burden to show that it was exempt. And so if you're a plaintiff, and 404 sets out very general duties of prudence and loyalty. So if you're a plaintiff challenging a prohibited transaction, and your 404 claim is essentially duplicative of and really adds, you're not complaining of anything beyond the transaction itself, really your central claim is your section 406 claim. Your 404 claim is, I think, and that's the companion claim. That's the claim that's ancillary. And so to dismiss the section 406 claim because the more difficult to bring and somewhat ancillary 404 claim fails I think has it entirely backwards. All right. Thank you very much. Mr. Becker? Good morning. May it please the Court. We're not really asking that this Court make all of the holdings that the plaintiff and the Department of Labor are saying we're asking for. Our attack on the complaint was under Iqbal and Tumley, and the enhanced pleading standard under Rule 8 that the Supreme Court imposed on those rules. But I think you think the standard is much higher than the Supreme Court thinks it is. If you look at such post-Tumley-Iqbal, well, post-Tumley you see Erickson, post-Iqbal you see Swiker, you see a lot of cases. And we've tried to say nudging it from the conceivable to the plausible is one thing. The plausible just means could it happen, not did it happen. And it's not a Rule 9 standard. So I think that you're asking for much more detail. They do allege that a prohibited transaction took place, and it's not impossible that there was a sweetheart deal with the trustees and the stock, whether it's stock valuation or the 6.25% interest rate at a time that the prime rate is 3.25%. It seems quite plausible that something like that could have happened, and that's a fiduciary claim. The prohibited transaction claim is even more straightforward. Well, what the plaintiffs in the Department of Labor want this Court to rule is that every ESOP transaction allows them to have discovery and to proceed past a motion to dismiss. I don't think so. Let's focus on prohibited transactions. They have to allege consistently with their Rule 11 obligations that one of the transactions described in 406 has happened, that there was the kind of self-dealing that the statute covers. It's usually the case, and I suppose not inevitably, but usually the case that burdens of pleading and burdens of proof in the sense of your ultimate responsibility at trial are the same. So they've alleged that, and in some ways I have the feeling you're not really disputing that a prohibited transaction took place. You just don't want even to move to the Rule 12c level of a motion for judgment on the pleadings, and I'm not sure where you have the right to avoid the need to prove which affirmative defense, one or more, you plan to rely on. Let me attempt to recast the analysis, Judge Wood. The very first sentence of 408e, or 408, 1108, talks about unless there's an exemption, then a prohibited transaction is one in which a party in interest... Yeah. All right. I mean, I don't know why that means that it's their burden to go through every exemption and say, and this one doesn't apply, and this one doesn't apply, and this one doesn't apply. And we're not asking them to do that. But you may not be, but the next person before us is going to be. Because if the general burden of pleading affirmative defenses lies on the plaintiff based on the language you just cited, then you aren't the only litigants we're going to see. Somebody else is going to have a different affirmative defense that they think the plaintiff should have negated, and it's going to get down to negating every single one and every subsection of one. Well, here the plaintiffs pled two specific exemptions. They pled adequate consideration and they pled the loan. So I think in the context of this case, and that's what we're asking the court to focus on, that's what we're talking about. But we can't focus only on that. You're making a general legal argument that everything in 1108 needs to be negated by the plaintiffs. With all due respect, Your Honor, that's the DOL's argument saying what we're making, but that is not an argument we made below or are making now. The logic doesn't permit the fence you're trying to build. Well, in the ESOP context, if I can get back to that, Your Honor, because many of these exemptions don't apply to the ESOP context at all, and certainly we're more than happy to have the court restrict its opinion to the ESOP context, adequate consideration is something that is defined as fair market value determined by the trustee in good faith. Right, and you allege that this, I mean, I'm actually flabbergasted at your argument that an internal valuation by a trustee is the same as the public market evaluation that Dudenhofer is talking about that the efficient markets hypothesis relies on that is well understood in the literature as an objective, uninterested valuation. It was the whole motivation of the Supreme Court's decision in Dudenhofer, and it doesn't apply to private valuations. Your Honor, we're not saying Dudenhofer wholesale applies to private valuations. But you have an argument in your brief saying that actually maybe trustees are better than the market, which is laughable. Let me make this point, and it's something that we addressed in the earlier case of the Armstrong v. LaSalle on which you were the panel, Judge Wood. The DOL has an entire proposed regulation. They've never finalized it, but they proposed it in 1988 because the statute says that adequate consideration is supposed to be determined pursuant to DOL regulations. The fact that the DOL has never promulgated that regulation doesn't mean that we can't learn from it. And what we learn is they go through an entire process. It's pages and pages. If there's an independent trustee, this is the DOL's own words. It's cited in our brief. If there's an independent trustee, and this is an independent trustee. This is not an internal trustee. This is not an employee of a company. There's no reason to believe that an independent trustee. It's not plausible to think that they would risk their entire business and reputation on an insider transaction. If an independent trustee makes the determination, then the DOL, it passes muster under the adequate consideration proposed regulation, the DOL's own regulation. This is even better because the proposed regulation says if it's not an independent trustee, they have to have an independent valuation advisor. So you're addressing, I assume, in all of this the fiduciary breach count, not the prohibited transaction. No, no, Your Honor. I'm addressing the privileged transaction because in order to determine whether the exemption applies, you need the regulation and the DOL's proposed regulation. So you're jumping past the burden of pleading. No, I don't believe I am, Your Honor, because what we're saying is that this. How would a plaintiff ever know what steps the trustee took? This would be highly confidential, I'm sure, whether the trustee had an independent department that looks at this or whether they engaged an outside appraiser or whether they went to the principal shareholder and said how much money do you want or any from the most perfect evaluation system to the worst. How would the plaintiff ever know what to allege other than just throwing down on a piece of paper what they were imagining? The plaintiffs could start by asking, which the plaintiffs didn't do here. And so you think that the trustee would have revealed confidential business information to a plaintiff? There's no pleading that the trustee would not have. That's why we really aren't talking about the pleading here. And also, here we have a plaintiff. The judge dismissed the complaint with leave to amend, and in the last paragraph of his opinion, he cited that there may be a need for the plaintiff to seek further information. He said that, but this happens all the time. Everyone is entitled to stand on their pleading, and when information is confidential business information within the control of your opponent, it's not a fanciful assumption that your opponent isn't going to say, oh, never mind discovery. We'll just turn it all over to you. Your Honor, it's not acceptable under Rule 11 not to even ask for it. And I will say, Your Honor, that we don't know. It is, I agree with you, a plaintiff's right to stand on its pleading. Yeah, absolutely. It's also a plaintiff's right to- I put no adverse inference there. You just evaluate the pleading. It's also a plaintiff's right to fall on its pleading. So the only pleading, I urge the Court, that we're evaluating is the one that was dismissed that was actually before the Court. That's all we are evaluating. I just don't agree with you that we draw any negative inference against the plaintiffs that they didn't try to amend. We need to understand, Your Honor, that every transaction that an ESOP enters into is a prohibited transaction unless it's exempt because it's with a party in interest. And so what the Department of Labor and the plaintiffs are actually arguing is that they need plead no more than it was a transaction between a party in interest, and the ESOP is one, and that's all you need, in order to go ahead, invoke discovery. It's very expensive. It would pertain to every ESOP transaction. It was not Congress's intention. Congress's intention, as Your Honor acknowledged and has acknowledged even in the plaintiffs' and the DOL's brief, was to foster ESOP formation. Well, carefully, I mean, you know, to say that ESOPs were going to be an exception to the diversification, we know from Dudenhofer, as Mr. Hahn pointed out, that ESOP fiduciaries are subject to the same duty of prudence that applies to ERISA fiduciaries in general, except that they need not diversify the fund's assets. So to the extent Dudenhofer pushes in any direction, it's holding the fiduciaries to a high standard. However, the standard is one of prudence, and it's a process determination. You know, the Department of Labor came in the Amstead case, and they filed an amicus there, and they said that it would be a strict scrutiny examination. The trustee was entitled to no deference, and the court didn't hear that, didn't adopt that standard. The court said, well, there's an independent trustee, as there is here, and there's a process that that's all you need to prove prudence. And here, there are no allegations in this complaint whatsoever, except conclusive allegations of a failure of process, of a failure of prudence. Well, they do say, do they not, that this is a 100% leveraged transaction. It's done with insiders. The bank doesn't try to find outside financing. But let's use different terms for those things. A 100% leveraged transaction is lawful. In fact, it's fostered by a statute that allows 100% ESOP-owned S corporations to have tax benefits. Even though you say that every time there's a transaction like this, the stock value decreases and the beneficiaries of the ESOP are hurt? Yes, because, Your Honor, when there's leverage in any transaction, it doesn't even need to be ESOPs, the value goes down, the equity goes down on the balance sheet. We have no allegation here of what the value was before the transaction. We have no allegation of whether there were any other factors beside the ESOP transaction that contributed in any way to the decline of value. It's simply not enough. And that's what we're saying. We don't need to have this court make a sweeping ruling about Dudenhofer or about affirmative defenses, whether 408E is an affirmative defense or not. What we know is on this pleading, there are insufficient allegations. There was an attempt to plead around 408E that failed, and that's all the judge below needed to know to dismiss the case, and I believe that's all that this court needs to determine and to consider as well. With regard to the process, Your Honor, it's paramount, because the DOL itself, if you look at the proposed regulation on how to determine adequate consideration to determine whether the exemption applies, focuses completely on the process, and it's all spelled out there. You would think, since this proposed regulation has been referred to by several courts and has been around now for 27 years, that the plaintiff would at least go through that adequate consideration proposed regulation and plead to the extent possible where the process failed. The plaintiff did no such thing. The plaintiff said there was a drop in value after the trial. They're pleading what they're able to observe as outsiders, as I understand it. Well, Your Honor, I think that's a very low standard. That's a far lower standard than Rule 11. There's no allegation that they ever asked the question. I don't see that. We actually haven't said that. The trustee is a trustee who serves the ESOP participants now as well as then. There was no question even asked of the trustee. It's simply not enough to put things into court and to cause independent trustees to incur enormous legal fees. These are enormous legal fees in these cases. The discovery is vast. And for the plaintiff and the Department of Labor, frankly, to say that that's all that is needed either under the 404 breach of fiduciary duty or the 406 prohibitive transaction claim simply flies in the face of the statutory scheme of the Department of Labor's own proposed regulation and of all the cases that have followed it. And we're not asking this court to do anything more than what the district court below did. Look at the complaint and affirm because the complaint does not meet the Rule 8 standards under Twombly and Iqbal. Everything else is something that my opponents have tried to pile on in this case, I guess to make it a test case. All we're saying is take this complaint as it stands. You do agree that all of the, I think it's five other circuits, don't agree with your position that the plaintiffs have the burden to plead facts disproving the 1108 exemptions. We're not asking the plaintiffs. The 8th, the 2nd, the 4th, the 5th, and the 9th. We're not asking the plaintiffs to disprove. Well, plead, though. That's what they're saying. Plaintiffs don't have to plead facts disproving. I think what the district court below was struggling with. Please just tell me, do you think we need to disagree with those five circuits or do you think that what you're arguing is consistent with what those five circuits have said? I think it's consistent, Your Honor. So you would agree you have the burden, the plaintiffs do not have the burden of pleading facts that would show the 1108 exemptions. If Great Bank pleads an affirmative defense in an answer, it has the burden of proving an affirmative defense. But what they said is the plaintiffs. So you're agreeing that the plaintiffs don't have to plead the facts. With all due respect, what we're saying is that the plaintiffs have to plead enough facts. So you disagree with the 8th, 2nd, 4th, 5th, and 9th circuits. No, let's take the Braden v. Walmart case, for example. There, the plaintiffs pled a great many facts showing a breach of fiduciary duty, and there is an intersection between the breach of fiduciary duty claim. Well, it's the 1108 exemptions I'm trying to focus on without much longer. Well, I'm trying to answer that, Your Honor. I think that here we have a complaint where the plaintiffs raised the 1108 exemption but didn't plead anything, not even to the level of Twombly and Iqbal's standard. Right, and the other circuits say that wasn't their burden. The other circuits say it was your pleading burden. Your Honor, I respectfully disagree with your reading of those cases. They don't say that Iqbal and Twombly are suspended and are not law, and the plaintiffs don't even have to plead to the level of Rule 8, Your Honor, simply because there's an exemption to the statute. What they say is if there is an exemption to a statute pled as an affirmative defense, the defendant has the burden of proving that. We're not arguing that, but what we're saying here is this complaint doesn't even rise to the level after raising the exemption of showing any facts, any failure of process, non-independence of the fiduciary, non-independence of the valuation firm, what the valuation was beforehand, and the interest rate is even more absurd. They pled falsely, and then they had to withdraw the pleading when they cited that there was an admission as to the inadequacy of the interest rate, and we're talking about 6.25%. So, Your Honor, all we would like the court to do is focus on this complaint. It's the complaint the plaintiffs chose to file. Even the DOL is taking no position on whether they've adequately pled facts sufficient for the 404 breach of fiduciary claim, and we're just asking, Your Honor, to take a look, as the district court did, and say this is not enough, and if there's another case someday with a different pleading which pleads at least enough to reach the Iqbal and Twombly standard, then they can raise these test issues, but not in this case, because they haven't gotten enough to get inside the door to even dignify the time of the court to take on these headier issues. Are there any other questions? Thank you. Thank you very much. You had some time, Mr. Breckenridge, if you would like to respond. Thank you, Your Honor. Unless there are any further questions from the court, I'll be of the remainder of my time. Apparently not, so thank you very much. Thanks to all counsel. We'll take the case under advisory.